**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

ROBERT DAWDY, JR.,

    Plaintiff,

vs.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

No. C 10-4063-MWB

**MEMORANDUM OPINION AND ORDER REGARDING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

_____

**TABLE OF CONTENTS**

*I.  INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II. STANDARD OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*III. ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    *A. Credibility Of Witnesses* . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        *1.   Dawdy's credibility* . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        *2.   Credibility of lay witnesses* . . . . . . . . . . . . . . . . . . . . . 7
    *B. Listing 12.04* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    *C. Dawdy's GAF Score* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    *D. Treating Physician's Opinion* . . . . . . . . . . . . . . . . . . . . . . . 10

*IV. DIRECTIONS ON REMAND* . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*V. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## I. INTRODUCTION

This case is before me pursuant to a Report and Recommendation (docket no. 23) from Chief United States Magistrate Judge Paul Zoss, regarding plaintiff Robert Dawdy, Jr.'s claims for disability insurance benefits (DIB) and supplemental security income benefits (SSI), pursuant to Titles II and XVI of the Social Security Act.

I quote from Judge Zoss's Report And Recommendation to introduce the background of this case:

> Dawdy was born in 1963, has a GED, and previously worked as a restaurant cook and telephone solicitor. AR 116, 332, 593, 609. On March 9 and August 16, 2005, Dawdy applied for DIB and SSI, alleging disability beginning on December 15, 2002 (later amended to March 1, 2005), due to seizures. AR 14, 86-90, 219, 223, 586-91, 603. The Commissioner denied Dawdy's applications initially and again on reconsideration; consequently, Dawdy requested a hearing before an Administrative Law Judge ("ALJ"). AR 50-61. On March 17, 2008, ALJ Jan Dutton held a hearing in which Dawdy and a vocational expert ("VE") testified. AR 599-634. On June 4, 2008, the ALJ issued a decision finding Dawdy not disabled since the alleged onset date of disability of March 1, 2005. AR 11-23. Dawdy sought review of this decision by the Appeals Council, which denied review on May 14, 2010. AR 7-10. The ALJ's decision thus became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

Report And Recommendation at 1-2 (docket no. 23).

On July 1, 2010, Dawdy filed a complaint with this court, seeking review of the ALJ's decision. The case was referred to Judge Zoss, pursuant to 28 U.S.C. § 636(b)(1)(B), for the filing of a report and recommended disposition of the case. After briefing from Dawdy and the Commissioner, Judge Zoss issued a Report And Recommendation on October 25, 2011 (docket no. 23), in which he found that the ALJ's

decision was neither supported by substantial evidence nor based on proper legal standards. Judge Zoss recommended that the ALJ's decision be reversed and remanded for further proceedings. Neither Dawdy nor the Commissioner filed an objection to Judge Zoss's Report And Recommendation.

## II. STANDARD OF REVIEW

I review Judge Zoss's Report And Recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006); *see* Fed. R. Civ. P. 72(b) (stating identical requirements); N.D. Ia. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court may review *de novo* any issue in a magistrate judge's report and recommendation at any time. *Id.* If a party files an objection to the magistrate judge's report and recommendation, however, the district

3

court *must* "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

In this case, no objections have been filed. As a result, I review Judge Zoss's Report And Recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"). The United States Supreme Court has explained that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)) (internal quotation marks omitted).

While I examine Judge Zoss's Report And Recommendation for clear error, I also review the Commissioner's decision to determine whether the correct legal standards were applied and "whether the Commissioner's findings are supported by substantial evidence in the record as a whole." *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007) (quoting *Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999)). Under this deferential standard, "[s]ubstantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v.*

4

*Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002); *see also Page*, 484 F.3d at 1042. In reviewing the Commissioner's denial of benefits to determine if it is supported by substantial evidence, the court must "not only . . . consider evidence in the record that supports the Commissioner's determination, but also any evidence that detracts from that conclusion." *Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) (citing *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001)). Nonetheless, even if a court "might have reached a different conclusion had [it] been the initial finder of fact," the Commissioner's decision will not be disturbed "unless the record contains insufficient evidence to support the outcome." *See Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007) (citations omitted).

### III. ANALYSIS

Judge Zoss made four central findings in his Report And Recommendation: 1) the ALJ's determinations of the credibility of Dawdy and two lay witnesses, Dawdy's girlfriend and father, were supported by substantial evidence; 2) the ALJ's finding that Dawdy's mental impairment did not meet or equal the criteria of Listing 12.04 was supported by substantial evidence; 3) the ALJ failed to consider Dawdy's Global Assessment of Functioning (GAF) score, which warrants remand; and 4) the ALJ failed to consider the opinion of Dawdy's treating physician, Dr. Taylor, that Dawdy "would be likely to miss two or more days of work per month on an unscheduled basis," AR 577, which also warrants remand. I review these findings for clear error.

#### A. Credibility Of Witnesses

##### 1. Dawdy's credibility

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). When evaluating a claimant's subjective complaints, the ALJ must consider 1) the

5

claimant's daily activities; 2) the duration, frequency, and intensity of the pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness, and side effects of medication; and 5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *see* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii) (codifying *Polaski* factors); *see also Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010). Nonetheless, "[t]he ALJ is not required to discuss each *Polaski* factor as long as 'he acknowledges and considers the factors before discounting a claimant's subjective complaints.'" *Halverson*, 600 F.3d at 932 (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)). Additionally, "'acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility,'" *id.* (quoting *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009)), and the ALJ may discredit "'a claimant's subjective complaints if there are inconsistencies in the record as whole,'" *id.* (quoting *Van Vickle v. Astrue*, 539 F.3d 825, 828 (8th Cir. 2008)). The failure to seek medical treatment may reflect adversely on the credibility of a claimant's subjective complaints. *See Comstock v. Chater*, 91 F.3d 1143, 1147 (8th Cir. 1996). Courts generally defer to an ALJ's credibility finding when the ALJ "'explicitly discredits the claimant's testimony and gives good reason for doing so.'" *Halverson*, 600 F.3d at 932 (quoting *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008)). The Eighth Circuit Court of Appeals has cautioned judges against "substitut[ing] [their] opinion for that of the ALJ, who is in a better position to assess credibility." *See Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004) (citing *Brown v. Chater*, 87 F.3d 963, 965 (8th Cir. 1996)).

Here, the ALJ properly acknowledged and considered the *Polaski* factors. *See* AR 19 (citing requirements of 20 C.F.R. §§ 404.1529, 416.929). The ALJ then articulated her rationale for discounting Dawdy's subjective complaints (AR 19-20): among other reasons, Dawdy's testimony was inconsistent with his daily activities and with the medical

6

record, as he had not sought psychiatric or neurologic care and because the medical record did not substantiate the severity of symptoms to which he testified. Because the ALJ's credibility determination was supported by substantial evidence, I agree with Judge Zoss that it must be affirmed.

### 2. *Credibility of lay witnesses*

Likewise, "[an] ALJ is, of course, free to believe or disbelieve any or all . . . lay witnesses," and may discount lay witness testimony if it is inconsistent with the medical record. *See Grebenich v. Chater*, 121 F.3d 1193, 1199-1200 (8th Cir. 1997). Here, the ALJ explicitly considered the submissions from Dawdy's father and girlfriend. AR 20-21. The ALJ discounted the credibility of Dawdy's father because the severity of Dawdy's symptoms, as alleged by his father, was inconsistent with the medical record. AR 20. Similarly, the ALJ discredited the log submitted by Dawdy's girlfriend because the dates of Dawdy's seizures, as tracked by the girlfriend's log, were inconsistent with the medical record. AR 21. Because the ALJ discounted the lay witnesses' credibility here for proper reasons, I will not disturb her credibility determinations. Therefore, I also agree with Judge Zoss's finding regarding the lay witnesses' credibility.

## B. Listing 12.04

The dispute between the parties regarding Listing 12.04, Affective Disorders, concerned whether Dawdy satisfied the criteria outlined by paragraph (B) of the listing,[1] which provides that a claimant's affective disorder must "result[] in at least two of the following:"

1. Marked restriction of activities of daily living; or

---

[1] Alternatively, a claimant may meet or equal Listing 12.04 by satisfying paragraph (C). 20 C.F.R. Pt. 404, subpt. P, app. 1, § 12.04. Because Dawdy does not contend that he satisfies paragraph (C), however, I do not consider it.

7

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, subpt. P, app. 1, § 12.04(B). The burden is on the claimant to establish that he meets or equals a listing. *See Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010). Dawdy argued to Judge Zoss that he suffers marked difficulties in maintaining social functioning and marked difficulties in maintaining concentration, persistence, or pace, thereby satisfying paragraph (B). Consequently, Dawdy contended that the ALJ erred in finding that he experienced only moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence, or pace.

As Judge Zoss properly found, the ALJ's determination that Dawdy's mental impairment did not meet or equal Listing 12.04 was supported by substantial evidence. The state agency consulting doctor, Dr. Lovell, found that Dawdy experienced moderate difficulties in maintaining social functioning because, although he experienced some difficulty interacting with authority figures, his activities of daily living demonstrated that he could talk with others regularly and shop on his own. AR 390-91, 394. Dr. Lovell also found that Dawdy experienced moderate difficulties in maintaining concentration, persistence, or pace, because, although Dawdy's thinking was at times slow and he experienced some memory difficulties, he was able to do a variety of daily activities, such as cooking, laundry, mowing, and home repairs, as well as play drums and guitar. *Id*. In contrast to Dr. Lovell's report, however, Dr. Stokes, the psychologist who examined Dawdy to determine if he was competent to stand trial in state court, found that Dawdy suffers "a high level of anxiety[] and feelings of paranoia," resulting in a "high risk for

further harm to himself and to others," and that he has "a long standing history of memory difficulties and . . . perceived lapses of time and may therefore not be able to process and recall events from one day to the next." AR 556. Nonetheless, it is not for me to reweigh the evidence that was before the ALJ. *See Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) ("[Courts] do not reweigh the evidence presented to the ALJ . . . ."). Rather, because substantial evidence, particularly Dr. Lovell's report, supports the ALJ's finding that Dawdy experiences moderate, rather than marked, difficulties in maintaining social functioning and in concentration, pace, and persistence, I agree with Judge Zoss that the ALJ's decision that Dawdy does not meet or equal Listing 12.04 must be affirmed.

### C. Dawdy's GAF Score

"[T]he ALJ is not free to ignore medical evidence but rather must consider the whole record." *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000). Moreover, "[w]hile a 'deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case,' inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand." *Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) (citing *Reeder*, 214 F.3d at 988; *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir. 1992)).

Here, after performing a consultive examination, Dr. Baker, a licensed psychologist, diagnosed Dawdy with a GAF score[2] of 45 on September 15, 2005. AR

---

[2] I quote from Judge Zoss's explanation of the GAF:
> The GAF, or global assessment of functioning, scale rates psychological, social, and occupational functioning; it is divided into ten ranges of functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000). A GAF rating between 41-50 indicates

(continued…)

9

521. The Vocational Expert (VE) testified at Dawdy's hearing that an individual with a GAF score of 45 would not be able to sustain employment. AR 632. The ALJ's opinion, however, failed to discuss Dawdy's GAF score and the VE's testimony regarding GAF scores. Because the ALJ failed to factor this significant evidence into her decision (or explain why she rejected such evidence), I agree with Judge Zoss that remand is appropriate for the ALJ to consider Dawdy's GAF score and the VE's testimony that someone with a GAF score of 45 could not sustain employment.

### D. Treating Physician's Opinion

"'[A] treating physician's opinion is generally entitled to substantial weight,'" but it "'does not automatically control in the face of other credible evidence on the record that detracts from that opinion.'" *Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010) (quoting *Heino v. Astrue*, 578 F.3d 873, 880 (8th Cir. 2009)). "'When an ALJ discounts a treating physician's opinion, he should give good reasons for doing so.'" *Id.* (quoting *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007)). Here, Dr. Taylor, Dawdy's treating physician, opined that Dawdy "would be likely to miss two or more days of work per month on an unscheduled basis." AR 577. The ALJ did not consider Dr. Taylor's opinion on this point, nor did she explain her reasons for discounting it. Dr. Taylor's opinion regarding Dawdy's likely absences from work is significant, as the VE testified in Dawdy's hearing that an individual who misses two or more days of work per month on an

---

[2](…continued)
       "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* at 34; *see also Martise v. Astrue*, 641 F.3d 909, 917 n.5 (8th Cir. 2011).
Report And Recommendation at 7 n.1 (docket no. 23).

unscheduled basis would not be competitively employable. AR 631. The ALJ erred in failing to consider, or explain why she discounted, Dr. Taylor's opinion that Dawdy would miss two or more days of work per month on an unscheduled basis. Thus, I agree with Judge Zoss that remand is proper for the ALJ to consider this part of Dr. Taylor's opinion and the VE's testimony regarding absences from work.

## IV. DIRECTIONS ON REMAND

On remand, the ALJ should consider 1) Dawdy's GAF score (AR 521) and the VE's testimony that an individual with Dawdy's GAF score could not sustain employment (AR 632); and 2) Dr. Taylor's opinion that Dawdy would miss two or more days of work per month on an unscheduled basis (AR 577) and the VE's testimony that an individual who misses two or more days of work per month on an unscheduled basis would not be competitively employable (AR 631).

## V. CONCLUSION

THEREFORE, I find that the Commissioner's decision is neither supported by substantial evidence nor based on proper legal standards. Judge Zoss recommended that this case be reversed and remanded for further proceedings and that judgment be entered in favor of Dawdy and against the Commissioner. I agree and thus **accept** Judge Zoss's well-reasoned and well-written Report and Recommendation (docket no. 23). The Commissioner's decision is **reversed and remanded** for further proceedings consistent with this opinion. The Clerk is directed to enter judgment in favor of Dawdy and against the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 20th day of January, 2012.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA